Good morning. My name is Jim Scherer. I represent the plaintiff appellant, Cody Cox. This is a 42 U.S.C. section 1983 action alleging the use of excessive force by the defendant in effecting arrest in violation of the Fourth Amendment. On the afternoon of January 31 of 2014, the defendant, Deputy Don Wilson of the Clear Creek County Sheriff's Office, shot the plaintiff, Cody Cox, in the face of the neck through his open passenger window while he was sitting in the driver's seat of his vehicle. The shooting occurred after a police pursuit of Mr. Cox's vehicle on westbound Interstate 70. The sole issue in our appeal is whether the district court erred in declining to instruct the jury that in evaluating the circumstances of the shooting, it could consider whether or not reckless or deliberate conduct on the part of Deputy Wilson unreasonably created the need to use the deadly force which he applied. This presents an issue as to whether or not the jury was properly instructed as to the governing law. There was some dispute in the braces to the proper standard of review. I would submit that the question presented here is not simply whether the judge should have included the operative language in the instruction. It's whether the jury should have been instructed on this legal principle. And I believe that that is a question as to whether the jury was properly instructed, and that is subject to de novo review. The principle at issue that an evaluation of the circumstances of determining whether or not the force used was objectively unreasonable includes consideration of whether or not the deliberate conduct which unreasonably created the need to use the deadly force has been governing law in the circuit for 25 years. It's been repeatedly acknowledged and applied by this court during that time period. Let's assume you're correct on that point. It seems to me, we'll hear from the other side, that there's plenty of precedent supporting your position on that. What about qualified immunity with respect to that? Do you have any cases that would alert Cox in this case that his conduct in getting out of the car, etc., was reckless conduct that would unreasonably create the need for the use of deadly force? And do you not need to have some authority, some Tenth Circuit or Supreme Court authority with similar facts to overcome the qualified immunity defense? As I understand the court's question, is there case law in the Tenth Circuit or Supreme Court which would place Deputy Wilson on notice that his conduct in leaving his patrol vehicle was unconstitutional or was unreasonable force? Well, what fit the standard that you established, reckless conduct that unreasonably created the need for the use of deadly force? It doesn't qualified immunity protect Cox unless you have authority factually similar, pretty closely factually similar in the Fourth Amendment context that this was improper conduct. I think that the response to that is that his conduct in leaving his patrol vehicle under the circumstances did not in and of itself constitute unreasonable force. Now the question is that the force that he applied, his shooting of Mr. Cox under these circumstances was constitutionally unreasonable. That is a different question. Now his stepping out of the vehicle was one factor in determining whether or not. Okay, but we already have a jury verdict saying that given what he had done, because the jury has to consider whether his conduct was reckless. We have the jury verdict that establishes that he did not use unreasonable force in light of the situation presented to him. So the only way there's liability is if there was some misconduct that led to the situation where he used force. And before we can hold him liable for his conduct as a whole, we have to have under qualified immunity, we have to have a case factually in point where that conduct was found to impose liability. Am I missing something there? Because I think that's the standard and I don't see, you might have a case against the municipality or whatever, but against him you need to show that he's not entitled to qualified immunity, clearly raised in district court and on appeal. It wasn't the basis of the district court's ruling because as you say and I'm inclined to agree, the district court misunderstood the law regarding whether liability could be imposed because of the earlier actions of the officer. I'm speaking too much. I want to hear from you. Okay. I appreciate the court's clarification of its question. I think the best answer to that, Your Honor, is that we're talking a little bit apples and oranges here. The jury's verdict wasn't premised on qualified immunity. It was premised on the Graham factors. Qualified immunity is a different issue. Are you disputing that the jury verdict established that there was no constitutional violation in the use of force aside from this possibility that the force resulted from the unreasonable conduct of the officer to start with? No, Your Honor. The jury came back, did not find constitutionally unreasonable force. The question is whether they were given the proper, complete list of factors to consider. And again, under the Tenth Circuit principle, it's not a black and white situation. Well, he acted recklessly, therefore it was unreasonable. That is simply one factor that the jury is to take into consideration in determining whether or not the force used was unreasonable. But it's the only factor that can impose liability in this case given the jury verdict, isn't it? As prior counsel, I cannot hazard a guess as to what the jury thought about or what the basis of their verdict was. Again, the qualified immunity wasn't presented to the jury. It was not a question that the jury was asked to answer. They were simply asked to find whether or not the force used, the deadly force applied in this case was constitutionally unreasonable under the totality of the circumstances. So that issue did not come up with the jury. That is a separate legal issue that the court had ruled on prior to this appeal. Again, there was no instruction given to the jury regarding qualified immunity. Can I jump in there? So your voice dropped a little bit. So I'm just trying to pull out your theory. Are you saying that qualified immunity is not an issue in this appeal? Did I hear you say that? Not in our appeal. I think the opposing counsel has raised it as an alternative basis for affirmance in the context of the district court's denial of their Rule 50 motion during trial. But our grounds for appeal simply are that the district court should have instructed that one of the circumstances they can consider in the totality of the circumstances is whether or not reckless conduct on the part of Deputy Wilson unreasonably created the need to use force. It's not a dispositive factor. In this case, I think it would have been important. Well, let's just, I think, let's just assume you're right on that. What happens with qualified immunity? Do I understand the court's question? Well, do we get to qualified immunity? Does this court consider qualified immunity? Even if we find you're correct on the recklessness? That the jury should have been instructed on that? Correct. Yes. Again, the jury was not presented with deciding the question of qualified immunity in this case. So I guess your answer is no? My answer is no. Okay, thank you. The only relevance to the issues in this appeal is the defense's alternative basis for affirmance, and that's again in the context of Rule 50. What do you mean in the context of Rule 50? In their briefing, the defense has argued as an alternative basis for affirmance that qualified, that the judge should have granted the Rule 50A motion at the conclusion of evidence. Okay. And that it brings in issues of, you know, the standards of qualified immunity given the state of the evidence at that time. And it also, I think, importantly brings in the issue of the standards for ruling on a Rule 50A motion during trial. I have three minutes if I could reserve. Yes. May it please the court, counsel. I will, I'd like to get to Judge Ide and Judge Hart's questions with regard to qualified immunity. I'd like to just talk a little bit about the statute at that stage so we can talk about that qualified immunity question. Then I'll plan to go back to the jury instruction issue that I'm not sure was hit much in the oral argument by my learned counsel. On January 31st, 2014, ski traffic was heavy. It was a Friday going up I-70 towards Georgetown. Cody Cox, who later was found to have a blood alcohol content of .280, was by all accounts driving exceedingly recklessly. David Taylor, who was a volunteer EMT with the fire department for Georgetown, they have a, he's located next to I-70. He listened to the traffic, the radio traffic about the driving conduct of Cody Cox. He also could see Cody Cox coming up the highway. He took the extraordinary step of self-dispatching. He didn't get dispatched. He dispatched the emergency vehicles he was so sure that there was going to be carnage on the highway. He wanted to be there when it happened. By the way, David Taylor's day job is a county court judge in Arapahoe County. Now, he turned out to have been following the incident in which Mr. Cox was going up this highway. Kevin Klaus, a deputy with the Clear Creek County Deputy Sheriff's Office, he was the first officer who got behind Mr. Cox. He observed Mr. Cox spinning out at one time facing him. At one time he tried to get out of his car to be able to get Mr. Cox to drive into a snow bank. Ultimately, Don Wilson, Deputy Wilson, my client, got into the chase and he took the lead. He also observed the same kind of conduct. He tried to get Mr. Cox by announcing on his loudspeaker to stop, stop, stop. Traffic as it was going towards Georgetown was getting heavier and heavier. One citizen, a brave citizen, saw what was happening. Every time the traffic would go, Mr. Cox would try and dart in between vehicles. So she stopped. That gave Deputy Wilson an opportunity to pull alongside, not knowing how long she would stay stopped because traffic kept going so it was open in front of her. He took this as an opportunity to get out of his vehicle with his gun drawn to confront Mr. Cox to tell him to stop. I should add, before that, Deputy Klaus had announced on this person, we physically have to stop him. He is not going to stop. And so that's what Deputy Wilson did. He got out of the vehicle, he went over to the window, put his hand to the window at which point Mr. Cox turned his wheel and drove towards Deputy Wilson. Now Mr. Deputy Wilson is a very big man, just towards 300 pounds. And if you look at the record you'll see that at the end stage it's very narrow between those two vehicles. And there were fact questions about that, but the jury decided them in favor of Don Wilson, that it was objectively reasonable, that he feared for himself or others, and that it was justified in him shooting him. What we are left then with is this question about the recklessly causing the need for use of force argument that's been raised by Mr. Cox. And that does raise two good questions for the court to consider. One is the jury issue, which is the appellate issue that Mr. Cox has brought. But the second one is the questions Judge Hartz and Judge Iyed that you raised, and that is on qualified immunity. And I think Judge Hartz, the point I think you were trying to make is, we've already decided the issue of whether or not it was objectively reasonable as to whether or not the use of force is appropriate. The only thing that could possibly be left is, is there a case that would be on point to say that a police officer, in this kind of a situation, is committing a Fourth Amendment violation by the decision to get out of the vehicle. And there isn't a case that says that. It's as if, the way the record stands now, is it's if we had submitted special jury instructions to the jury and said, answer this question, would it be a Fourth Amendment violation to have gotten out of the vehicle, to have made that tactical decision? And then we could address that special jury instruction, the court could, on a qualified immunity basis. But that's the way, as I took your question, Judge Hartz, is where's the case on that? There's no factual dispute that he did make a choice to get out of the vehicle. Where's the case that says that you are not qualified immune for that decision? And Mr. Shearer couldn't give you a case because there's not a case, and there's cases on the other side of it, and we cite those in the briefs, in which, A, it is appropriate, it's inappropriate to try and use 20-20 hindsight to second guess Don Wilson's decision to get out of that vehicle. And that is why we raised it as an alternative theory for purposes of affirmance of the jury's immunity is an argument that cannot be overcome by Mr. Cox. And as an alternative basis, it should be the basis for affirming the decision. But let me move back to the jury instructions. If there's any other questions on qualified immunity, I'm happy to address those. But with regard to the jury instructions, here's what we had. We had a court who gave very direct instructions. He gave the instructions out of Graham. They were very, very similar with regard to the legal requirements under Graham v. Connor. The instruction came largely from the O'Malley's federal jury instructions from the lethal fourth instruction that's used there with only minor modifications. And the court gave that instruction. In addition to that instruction, it's part of the record, the judge also gave a number of instructions with regard to evidence. For example, saying you were to consider all of the evidence in the record. And the court also gave another instruction that says you may consider the evidence from expert witnesses. And Mr. Shearer was given the opportunity and took advantage of the opportunity to present the evidence that he thought was important with regard to it being reckless for Don Wilson to get out of the vehicle. That evidence was not barred. I tried to keep that evidence out, but the court did not keep that evidence out. So it's like a painting, if I can, this may not be a perfect analogy, but I look at the trial and the evidence as the painting. And Mr. Shearer was given the opportunity to paint that argument. And then the court directed the jury, this is how you interpret this painting. And jury instructions are to conceptualize what it is that the jury is supposed to do. And the court was clear that the concept that the jury had to consider was that as set forth by the Supreme Court in Graham v. Connor, the objective reasonableness inquiry. And with regard to that, the court specifically said, straight out of Connor, that look, it is a totality of circumstances situation. You were to judge the totality of circumstances as to whether it was objectively reasonable for Don Wilson to have used lethal force against Cody Cox. And the jury said, yes, it was objectively reasonable. The court did not give the instruction asked by Mr. Shearer that says, you may consider whether it was reckless for Mr. Cox, for Mr. Wilson to have caused the circumstances in which he ultimately had to use force. That is to be considered, it's a specific instruction, that's to be considered on an abuse of discretion standard. Now, of course, the court looks to the instructions as a whole to determine whether as a whole they legally are correct. Well, counsel, can I just focus you on the one sentence? It seems to be an issue. The reasonableness of defendant's acts must be judged from the perspective of a reasonable officer on the scene at the time of the seizure, that is, the shooting. Is it your argument that that is correct? It is my argument that that is correct when it is combined, Judge Ide, with the broader concept of totality of circumstances. So, I mean, I don't read into that that we're only judging it from the exact second that the trigger is pulled. I think that it is important to consider the contextualized circumstances of the use of force. What I don't think is necessary is that there be a specific instruction that says that. Now, I frankly take some issue with regard to the reckless endangerment, what the state of the law is on reckless endangerment and what its context is with the Fourth Amendment in light of the Sheehan case, in light of the Mendez case. And I argue those in the jury well before you get to that question. And so my opinion is, yes, that's a correct statement of law. And in the context of all the instructions that were given, the totality of instructions, Graham v. Connor instructions, that, yes, that's appropriate and sufficient for the jury to have made their objective reasonableness determination. Did I answer that question? I hope I didn't talk around it. Well, yes, I guess. I just, maybe you can just focus on time of the seizure, that is the shooting. Doesn't say, that by implication seems to exclude events leading up to the shooting. Is that not correct? I don't think that's correct. And tell me why. Well, I think that the instruction as a whole doesn't limit it to that. And I have the actual instruction. I'm sure the court has it in front of the court as well as part of the record. I believe that the instruction said that you're to consider such things as whether or not there was, he was trying to escape, whether or not there was a danger to the officer or to the others. I think the context of the instruction is broader than just saying at the moment that he pulls the trigger. If the court reads it that way, then I certainly defer to what the court's interpretation is. But that's not the way I'd read it at the time of the instruction being given or at the time as I've prepared for this argument. Okay. And then the next line, I'll just focus you, you should consider whether the defendant was in danger at the precise moment that he used force. So that, again, is focusing on at the precise moment. Maybe you can react to that as well. I think that's consistent with the law, that it is to be focused at the time. I mean, if the officer doesn't feel like he's in danger at the time he pulls the trigger, maybe he felt like he was in danger 10 seconds before, then the rubric under Graham v. Connor is going to be different. And I think that's what the instruction is trying to impart, as opposed to telling the jury or to completely ignore the contextual circumstances in which led to the need for force, such as the danger that was observed by the officer as he chased Cody Cox, such as the amount of traffic around, such as the fact that we had Ms. Kincaid, who was the lady who stopped in front of Mr. Cox. I think that the jury's clear that all of those things are the type of things to consider. And particularly if you start looking at the other instructions that say you're to consider all the evidence that you heard, and we had eight days' worth of trial, and we had eight days' worth of lots of testimony with experts on both sides, on both the liability and the damages theory. So I understand the court's concern on that, and if it was strictly tying a noose around just a few seconds of time, I would have an issue with such an instruction. Thank you. So I think that one of the things that we have to think about is totality of circumstances. And totality of circumstances test in the Graham context is one thing, but totality of circumstances is something we use in our jurisprudence in all kinds of contexts, probable cause, voluntariness of confessions. And if the court's going to say that you are absolutely get an instruction that is your circumstances, because totality of the circumstances is an idea in which everything is to be considered, as opposed to naming all the possible circumstances. If you do that, you're inviting appeals because there's no way that you're going to be able to list all the kinds of circumstances that might be included. I asked, for example, for an instruction that said that you should not consider the question as a circumstance whether there was alternative uses of force available, and the court declined to give that. Well, counsel... Totality of the circumstances is a field without offense. And unless the court includes the conduct which may have put the officer in the situation unnecessary, has left out a component part of that totality of the circumstances. Judge McKay, I very much understand and respect that position, but I could name you a number of other circumstances that might also be part of that set of possibilities that might affect a jury's verdict. And when the court tells you it is the totality of the circumstances and that you're to consider all evidence, and it heard that evidence, then if the judge picks one specific circumstance, doesn't it risk the chance that the court is emphasizing one circumstance over another, as opposed to giving the jury, which that's what we do with juries, is we charge them with being able to sort out these days of evidence to explore the things that are important in the context of the evidence the court permitted. Your time is up. It is. One more question. So, but is your position that we need not decide the instruction issue if we decide on qualified immunity? I think that the court can choose which order it wants to consider those issues. I brought it up as an alternative theory. Perfectly fine if the court chooses to address that first, much like the court does in a qualified immunity analysis on the two-tiered approach, whether it's constitutional and whether it's clearly established. So I think that it's perfectly within the court's discretion to choose which of those alternative theories that it wishes to address. And I rely on the briefs on the cross-appeal issues. Thank you so much. Counsel just made the statement at the beginning of his argument that it was not a Fourth Amendment violation for Deputy Wilson to exit his patrol vehicle under the circumstances. I think that's absolutely correct. And I think I do have perhaps a more cogent answer for the court's earlier question. I think the best way I can state it, that in itself is not a Fourth Amendment violation or a qualified immunity analysis or anything else or otherwise. That in itself is not a use of force. And the Fourth Amendment is directed towards a reasonableness of use of force. What that action was, was a circumstance, part of the circumstance, is connected to the shooting. Let's back up a little bit and think of the purpose of qualified immunity. It's to protect officers who have no reason to think that what they're doing is wrong, essentially. It's got to be, there's got to be a clear direction to them that this is wrong before we can hold them liable under a Fourth Amendment claim. But here, the only source of liability, the only thing that the officer did wrong, allegedly, that could lead to liability, I'm not sure, would be that he created the dangerous situation that led to a, according to the jury, reasonable use of force. So what told the officer, I've got to be more careful about getting out of the car, how I get out of the car, because if things go bad, then I'm going to be liable if I have to shoot the person. And isn't that really what qualified immunity is all about? I would disagree, Your Honor. Okay. I'm not surprised. The reason, I guess, would be important. The reason I would disagree is the verdict was not based on qualified immunity. The verdict was based on a finding, however they got there, that the use of force was reasonable in this case, under the totality of the circumstances as they were instructed. And that use of force is focused on the act of him shooting Mr. Cox, given the circumstances, the totality of the circumstances. And for whatever reason, however they got there, that is what the jury determined. The question on appeal is whether or not they were given all the circumstances which would let them make a legally proper determination of that issue. And I have 15 seconds left. The question essentially in this case is whether the jury could have understood reasonably from the instruction that was given that they could consider any reckless conduct by Deputy Wilson in determining totality of the circumstances and I submit that given the language of the instructions they were given, they could not have, they could have not reasonably done so. My time is up. Thank you, Counsel. Case is submitted. Counsel are excused.